IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GALDERMA LABORATORIES, L.P. | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| RX PLUS LLC d/b/a RX PLUS PHARMACY, LOUISE GATTI, AND ELISA VALENTI | § § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Galderma Laboratories, L.P. ("Galderma") files its Original Complaint asserting claims against Defendants RX Plus LLC d/b/a RX Plus Pharmacy (the "Pharmacy"), Louise Gatti ("Gatti") and Elisa Valenti ("Valenti" and together with the Pharmacy and Gatti, the "Defendants") and respectfully states as follows:

## I.
## OVERVIEW

1. Galderma is plagued by pharmacies that, for the last several years, have engaged in healthcare scams by taking advantage of Galderma's CareConnect program, which is intended to allow patients to purchase Galderma's prescription products for little or no co-pay. In connection with this program, certain pharmacies and pharmacists have been submitting wholly fraudulent reimbursement claims for Galderma's prescription products—products the pharmacies never sold and yet the pharmacies bilked Galderma into paying. Defendants are among the pharmacies engaged in such healthcare fraud against Galderma.

## II.
## PARTIES

2. Plaintiff Galderma Laboratories, L.P. is a Texas limited partnership with its principal place of business at 14501 North Freeway, Fort Worth, Texas 76177.

3. Defendant RX Plus LLC d/b/a RX Plus Pharmacy operates in and its member is a citizen and resident of New York. RX is engaged in business in Texas by contracting with a Texas entity and purchasing that Texas entity's products, some of which come from Texas distribution facilities. RX can be personally served through its officer, Louise Gatti, at 71-30 Myrtle Avenue, Glendale, New York 11385 or wherever she may be found.

4. Defendant Louise Gatti is a resident and citizen of New York and is engaged in business in Texas by contracting with a Texas entity and purchasing that Texas entity's products, some of which come from Texas distribution facilities. Gatti can be personally served at 71-30 Myrtle Avenue, Glendale, New York 11385 or wherever she may be found.

5. Defendant Elisa Valenti is a resident and citizen of New York and is engaged in business in Texas by contracting with a Texas entity and purchasing that Texas entity's products, some of which come from Texas distribution facilities. Valenti can be personally served at 9102 78th Street, Woodhaven, NY 11421-2902 or wherever she may be found.

## III.
## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties' citizenships are diverse. Specifically, Galderma seeks nearly $500,000 dollars and this action is between Galderma, a citizen of the State of Texas on the one hand, and Defendants, citizens of a foreign state (New York) on the other.

7. Venue is proper in Tarrant County, Texas because the contract giving rise to and made the subject of this lawsuit expressly provides that it is governed by Texas law and provides for venue in Tarrant County, Texas. *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013).

8. This Court has personal jurisdiction over Defendants because they conduct business in Texas and, in the agreement with Galderma, Defendants expressly consented to exclusive jurisdiction in Texas.

## IV.
## BACKGROUND FACTS

**A.    Galderma and its CareConnect Card.**

9. Galderma—founded in 1981—is a skin care company located in Fort Worth, Texas whose mission is aimed at enhancing the quality of people's lives by focusing on science-based solutions for skin health. Galderma manufactures and sells both over the counter and prescription products.

10. In order to better serve patients using its prescription products, Galderma offers the Galderma® CareConnect Patient Savings Card ("CareConnect Card") that allows uninsured and commercially insured patients to purchase Galderma's products for little or no co-pay at participating pharmacies.[1]

11. The CareConnect Card can be used for one or more Galderma prescription products. When a patient presents his or her prescription for the Galderma product, insurance (if any) and the CareConnect Card, the pharmacy dispenses the Galderma product to the patient. Upon dispensing the Galderma product to the patient, the patient pays the pharmacy a discounted

---

[1] The discounted pricing available to patients who use CareConnect Card is available on the CareConnect website at https://www.galdermacc.com/pricing-information.

co-pay set by the patient's insurance provider, if any, and Galderma's CareConnect Card's Terms and Conditions. In addition, the pharmacy seeks reimbursement from the insurance provider (if any) and reimbursement from Galderma. The amount of reimbursement the pharmacy seeks from Galderma is the difference between the cost the pharmacy purchased the Galderma product for less the reimbursement it receives from the insurance company and the co-pay paid by the patient. The average reimbursement varies – because the patient may be uninsured or insured – but can exceed $400 for a single prescription.

**B.      Defendants' relationship with Galderma.**

12.     Gatti owns RX Plus LLC d/b/a RX Plus Pharmacy based in Glendale, New York. Valenti was the pharmacist in charge of the Pharmacy at all relevant times.

13.     Among other things, the Pharmacy sells Galderma products. Because the Pharmacy sells Galderma products and claims reimbursement from Galderma under the CareConnect Card ("Claims"), it, Gatti and Valenti agreed to and accepted the CareConnect Card's Terms and Conditions.[2]

14.     Under the CareConnect Card's Terms and Conditions, Valenti and Gatti, on behalf of the Pharmacy, may only submit a reimbursement Claim to Galderma when (a) the Pharmacy receives a valid prescription for a Galderma prescription product; (b) the patient and/or the Pharmacy uses the CareConnect Card; (c) the Galderma product is covered by the CareConnect Card; and (d) the Pharmacy actually dispenses a Galderma product to the patient.

---

[2] The CareConnect Terms and Conditions available at:
https://www.galdermacc.com/sites/default/files/pdf/TermsConditions.pdf.

**C.     Defendants' fraudulent scheme to steal money from Galderma by abusing the terms and conditions of the CareConnect Card.**

15.     Between January 1, 2017 to December 31, 2019, Valenti and Gatti submitted on behalf of the Pharmacy 14,605 Claims against Galderma's CareConnect Card, but had only purchased 11,402 Galderma products to dispense. In other words, Valenti and Gatti submitted 3,203 fraudulent Claims for Galderma products that the Pharmacy did not actually dispense to its patients (the "False Claims"). Galderma paid the Pharmacy a minimum of $496,228.90 on the False Claims over the last three years.

16.     Galderma recently discovered the discrepancy in Defendants' Claims and flagged their activity as suspicious. In response, on or around September 27, 2019, Galderma requested Defendants validate both the Pharmacy's purchases of Galderma products between January 1, 2017 to August 31, 2019, and address any anomalies Galderma was seeing in the Claims. Defendants ignored this request and continued submitting False Claims.

17.     Accordingly, Defendants have stolen at least $496,228.90 from Galderma for fraudulent "reimbursements" for False Claims under the CareConnect Card.

## V.
## CAUSES OF ACTION[3]

**A.     Fraud**

18.     Galderma incorporates the foregoing paragraphs, the same as if fully set forth herein.

19.     Defendants made misrepresentations to Galderma. Specifically, Defendants submitted 3,203 False Claims for Galderma's products. When Defendants made the misrepresentations to Galderma (through McKesson, Galderma's administrator of the

---

[3] To the extent necessary, Galderma pleads and asserts each of its causes of action in the alternative.

CareConnect Card program), Defendants knew the representations were false because Defendants did not actually purchase the products from Galderma or any wholesaler; thus, Defendants did not actually dispense the product to any patients. Defendants made the misrepresentations with the intent that Galderma act on them.

20. These misrepresentations were material to Galderma's decision to reimburse Defendants under its CareConnect Card program. Galderma relied on these misrepresentations and acted on these misrepresentations when it paid Defendants for the False Claims made under the CareConnect Card.

21. Defendants' fraud injured Galderma who has incurred damages in excess of this Court's minimum jurisdictional amount, for which all or some of the Defendants are jointly and severally liable. Further, because Defendants intentionally, willfully, wantonly, maliciously, and without justification or excuse committed fraud against Galderma, Galderma is also entitled to recover exemplary damages from Defendants in an amount to be determined by the trier of fact. Galderma's damages will continue to accrue if Defendants continue their fraudulent conduct. Galderma seeks equitable relief, including but not limited to, the imposition of a constructive trust.

**B.    Breach of CareConnect Card's Terms and Conditions**

22. Galderma incorporates the foregoing paragraphs, the same as if fully set forth herein.

23. The CareConnect Card's Terms and Conditions is a valid and enforceable contract. By using the CareConnect Card and seeking reimbursement for Claims under the CareConnect Card, Defendants agreed to be bound by this contract.

24. Defendants breached the CareConnect Card's Terms and Conditions by, among other things, submitting False Claims.

25. Defendants' breach of the CareConnect Card's Terms and Conditions have caused harm to Galderma, for which all or some of the Defendants are jointly and severally liable. Galderma seeks actual damages in an amount and of a character within this Court's jurisdiction, plus pre-judgment and post-judgment interest in the maximum amount allowed by law.

**C.   Money Had and Received**

26. Galderma incorporates the foregoing paragraphs, the same as if fully set forth herein.

27. Defendants submitted False Claims under Galderma's CareConnect Card and received monies from Galderma for those False Claims. The benefit Defendants received was obtained by taking advantage of Galderma and its free CareConnect Card program. Defendants have unjustly enriched themselves at Galderma's expense and, as a result, hold on to money that, in equity and good conscience, belongs to Galderma.

28. Accordingly, Galderma has suffered damages, for which all or some of the Defendants are jointly and severally liable. Based on the fundamental principles of justice, equity, and good conscience, Galderma seeks actual damages in an amount and of a character within this Court's jurisdiction, plus pre-judgment and post-judgment interest in the maximum amount allowed by law.

**D.   Attorneys' Fees**

29. Galderma seeks its reasonable and necessary attorneys' fees from Defendants under Texas Civil Practice & Remedies Code § 38.001.

## VI.
## CONDITIONS PRECEDENT

30. All conditions precedent to Galderma's claims for relief have been performed, have occurred, and/or have been waived.

## VII.
## PRAYER

THEREFORE, Galderma asks that this Court set this matter for trial and upon trial enter judgment in its favor, and against Defendants, awarding Galderma all direct and consequential damages; punitive damages; its costs of suit, including reasonable and necessary attorneys' fees and expenses for the prosecution and appeal, if any, of this matter; pre-judgment and post-judgment interest on all sums awarded in the Court's judgment; and granting Galderma such other and further relief, general or special, as this Court may deem just and proper.

Respectfully submitted,

*/s/ David J. Drez III*
David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Lauren K. Drawhorn
State Bar No. 24074528
lauren.drawhorn@wickphillips.com
Schyler P. Parker
State Bar No. 24092937
schyler.parker@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:   (817) 332-7788
Facsimile:    (817) 332-7789

**ATTORNEYS PLAINTIFF FOR GALDERMA LABORATORIES, L.P.**